UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEXTER FISHER, ) <br> ) <br>        Petitioner, ) <br> ) <br>        v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br>        Respondent. ) | No. 1:21-cv-00707-JMS-DLP |

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
AND DENYING CERTIFICATE OF APPEALABILITY**

In 2018, a jury convicted Dexter Fisher of seven charges, including robbery, brandishing a firearm during a crime of violence, and possessing a firearm as a convicted felon. The Court imposed the statutory minimum prison sentence, and he is now serving a 684-month prison term.

Mr. Fisher's motion for relief under 28 U.S.C. § 2255 asks the Court to find that his attorneys provided constitutionally ineffective representation in preparing for and litigating his trial, sentencing, and appeal. For the reasons discussed below, Mr. Fisher's § 2255 motion is denied, this action is dismissed with prejudice, and no certificate of appealability will issue.

**I. The § 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error

of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Factual and Procedural Background

In August 2015, a grand jury charged Mr. Fisher with three counts each of robbery and brandishing a firearm during a crime of violence. *United States v. Fisher*, no. 1:15-cr-00157-JMS-MJD-1 ("crim. dkt."), dkt. 1. The charges stemmed from three robberies that took place approximately a year earlier in Maron County. The Court of Appeals summarized the robberies and Mr. Fisher's apprehension as follows:

> Indianapolis experienced an increase in pharmacy robberies during the late summer and fall of 2014. Three pharmacy robberies in August and September shared a common pattern: the robber would jump over the pharmacy counter, brandish a firearm, demand opioid pills, and leave the store immediately after obtaining the pills.
>
> In October, police responded to a call from a CVS Pharmacy employee concerned that a man in the store, Fisher, had been involved in a previous robbery. The officer approached Fisher and asked for his identification. Fisher panicked, pushed a shopping cart into the officer, and pulled a semiautomatic pistol from his pants as he ran through the pharmacy's back exit. Another officer apprehended Fisher a few blocks away. Officers found a Smith & Wesson semi-automatic pistol along Fisher's escape route. This pistol was the only firearm submitted into evidence at the trial that followed.
>
> Employees of three pharmacies that had been robbed before the October incident identified Fisher as the person responsible for those robberies. Officers also found on Fisher's phone pictures of him in clothes identical to those worn during the robberies.

*United States v. Fisher*, 943 F.3d 809, 812 (7th Cir. 2012).

In August 2017, a superseding indictment added three additional charges: one for the attempted robbery, one for carrying a firearm in furtherance of that attempt, and one for being a felon in possession of a firearm. Crim. dkt. 37.

Following a two-day trial in March 2018, a jury convicted Mr. Fisher of the six charges stemming from the first three robberies, plus the felon-in-possession charge. Crim. dkt. 78. The jury acquitted Mr. Fisher of the two charges related to the attempted robbery. *Id.*

The Court sentenced Mr. Fisher in August 2018 to 684 months (57 years), plus one day, in prison. Crim. dkt. 127 at 2. This was the shortest sentence the law permitted. Count 2—the first brandishing offense—carried a minimum sentence of seven years. 18 U.S.C. § 924(c)(1)(A)(ii). By virtue of that conviction, Counts 4 and 6—the second and third brandishing offenses—carried 25-year minimums. 18 U.S.C. § 924(c)(1)(C)(i) (eff. Oct. 6, 2006–Dec. 20, 2018). The statute requires that these three sentences run consecutive to one another *and* any other sentences. 18 U.S.C. § 924(c)(1)(D)(ii). The Court issued one-day, concurrent sentences on the three robbery charges and the felon-in-possession charge, generating the total sentence of 57 years and one day. Crim. dkt. 127 at 2.

On direct appeal, the Seventh Circuit affirmed Mr. Fisher's conviction and sentence, remanding only with instructions to clarify one portion of the written judgment. Crim. dkt. 126.

William Dazey represented Mr. Fisher beginning with his initial hearing in April 2016. Crim. dkts. 12, 13. A year later, Mr. Fisher filed a motion asking the Court to appoint a different attorney. Crim. dkt. 27. The Court granted Mr. Fisher's motion and appointed Ken Riggins in June 2017. Dkt. 32. Mr. Riggins represented Mr. Fisher through his trial and sentencing. Thomas Patton and Johanna Christiansen represented Mr. Fisher on appeal.

Mr. Fisher now seeks relief under § 2255, asserting that numerous failures by his attorneys require that his conviction and sentence be vacated. For efficiency, Court addresses the specific facts underlying each challenge below.

### III. Analysis

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of *Strickland*, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up).

**A.     Lack of Communication Before Trial**

Mr. Fisher first contends that Mr. Riggins rendered ineffective assistance by failing to provide "any reasonable communication" and thereby preventing Mr. Fisher from "effectively participat[ing] in his case." Dkt. 4 at 11. Mr. Fisher asserts that Mr. Riggins did not return or even acknowledge his phone calls, e-mails, and written correspondence*, id.*, but he does not explain the substance of those communications or what consequences he suffered from Mr. Riggins' failure to respond. Mr. Fisher concedes that Mr. Riggins met with him in person but complains that he did so "infrequently." *Id.* at 12.

"To satisfy the first element of the *Strickland* test," Mr. Fisher "must direct the Court to specific acts or omissions by his counsel." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir.

2013). Mr. Fisher's contentions about Mr. Riggins' pretrial communication consist only of broad assertions and do not meet this standard. Moreover, Mr. Fisher has not articulated prejudice. The Court understands that Mr. Fisher wished to play a more active role in his own defense and communicate more regularly with Mr. Riggins, but he has not explained how his lack of communication led to his conviction or sentence or how more communication would have allowed for a different outcome. Perhaps Mr. Riggins could have communicated better with his client, but Mr. Fisher has not given the Court reason to find his communication constitutionally ineffective.

**B.        Failure to Advise of Potential Sentence**

Mr. Fisher's next argument concerns plea negotiations and, unfortunately, is not clear. Mr. Fisher alleges that Mr. Riggins "expressly failed to correctly familiarize [himself] with the relevant facts of the case, case law, applicable Guidelines and potential consequences of a conviction in his case." Dkt. 4 at 14. He also "failed to properly inform Fisher of any other matter related to his case, which led to his 684 month plus one day sentence." *Id.* Had Mr. Riggins done otherwise, Mr. Fisher argues, "there is a reasonable probability that he would have opted to plead to the Superseding Indictment and he would not have proceeded to trial." *Id.*

Mr. Fisher again fails to cite "specific acts or omissions" that rendered Mr. Riggins' counsel constitutionally ineffective with respect to his decision to plead guilty or go to trial. *Blake*, 723 F.3d at 879. Assuming he could, though, Mr. Fisher has not demonstrated any prejudice.

Every representation that ends without a favorable plea agreement is not constitutionally ineffective. Plea bargaining "involves factors beyond the control of counsel," including "the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000); *see also Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017) (Counsel "cannot be faulted for the government's decision not to reward an

uncooperative defendant with a plea agreement. The government is not required to offer any defendant such an agreement.").

Mr. Fisher could establish ineffective assistance by demonstrating that Mr. Riggins' ineffective assistance cost him an opportunity to plead guilty under favorable circumstances. "To show prejudice," though, Mr. Fisher "must demonstrate a reasonable probability that [he] would have accepted" the plea offer in question. *Missouri v. Frye*, 556 U.S. 134, 147 (2012). Moreover, he must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

Mr. Fisher argues that better work by Mr. Riggins would have raised "a reasonable probability that he would have opted to plead to the Superseding Indictment," dkt. 4 at 14, but that plea would have resulted in more convictions and a longer sentence. The superseding indictment included nine charges—all seven for which Mr. Fisher was convicted, plus two more. The Court sentenced Mr. Fisher to the statutory minimum for those seven charges, so he could not have achieved a lighter sentence by pleading guilty to those seven charges and two more.

Moreover, the record conveys a less-than-reasonable probability that Mr. Fisher would have pled guilty to fewer charges for the promise of a shorter sentence. In January 2018, weeks before trial, the government offered to dismiss eight charges in the superseding indictment if Mr. Fisher would plead guilty to the ninth—felon in possession—and accept a 32-year sentence. Crim. dkt. 106 at 3:24–4:6. The Court explained painstakingly on the record that, if Mr. Fisher was convicted of just one brandishing count, he would face a minimum sentence of seven years, and each additional brandishing conviction would carry an additional, mandatory 25 years that must be served consecutively. *Id.* at 6:14–22. Mr. Fisher confirmed that he understood that risk and would go to trial "knowing what these potential consequences are." *Id.* at 6:23–25, 7:16–18.

6

Mr. Fisher characterizes the 32-year offer as "ridiculous" and asserts that it "is hard to imagine that anyone would" accept such an offer. Dkt. 16 at 3. Mr. Fisher was 33 years old at sentencing, so a 32-year sentence would have been a bitter pill, but it was meaningfully shorter than the de facto life sentences he faced and ultimately received. Mr. Fisher adds that the 32-year offer "was the only offer that was ever presented to him by" Mr. Riggins. *Id.* But no evidence indicates that the government ever offered a better offer, much less that Mr. Riggins failed to communicate it.

Mr. Fisher does not cite evidence of, or even allege, specific actions Mr. Riggins could have taken to secure a better offer. When he received an offer to plead guilty to a sentence dramatically lower than his ultimate sentence, Mr. Fisher insisted on standing trial. Mr. Fisher has not articulated deficient performance or prejudice related to plea negotiations.

**C.     Failure to Investigate**

Mr. Fisher argues that Mr. Riggins' pretrial investigation was deficient in several respects. Dkt. 4 at 15; dkt. 16 at 3–4. When counsel's "purported deficiency is based on a failure to investigate," the petitioner must "allege 'what the investigation would have produced.'" *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (quoting *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004)). This requires "'sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Richardson*, 379 F.3d at 488 (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)).[1] Mr. Fisher's challenges to Mr. Riggins' pretrial investigation do not meet this standard.

---

[1] *Compare Richardson*, 379 F.3d at 488 ("Richardson argues that counsel should have investigated whether the images recovered from his house were of actual children. . . . However, Richardson offers no reason to believe that any of the pictures found in his possession were not of real children; in fact, nowhere in his § 2255 motion does he even allege that some of the images were virtual and not real."); *to Anderson v. United States*, 981 F.3d 565, 575 (7th Cir. 2020) (Anderson "is not required at this stage to hire a toxicologist and prove the merits of further investigation before the court. Anderson has alleged that Reader

Mr. Fisher states that Mr. Riggins "failed to investigate witness statements, which could have been used to impeach the government's witnesses." Dkt. 16 at 3. But he does not identify any particular witness or testimony that should have been scrutinized.

Mr. Fisher asserts that Mr. Riggins failed to develop evidence regarding the "commonality" of a hat. Dkt. 16 at 3. The Court infers that Mr. Fisher wanted Mr. Riggins to establish reasonable doubt by arguing that a hat found on Mr. Fisher's person or in a search of his car or home was also seen on security video of the robberies because so many people have similar hats. Dkt. 16 at 3. But Mr. Fisher does not provide information regarding the popularity of the hat in his petition or reply, and "nowhere in his § 2255 motion does he even allege" that the hat captured on camera was not the hat confiscated from his person, car, or home. *Richardson*, 379 F.3d at 488.

Similarly, Mr. Fisher argues that Mr. Riggins should have assembled cell phone data "to show that Fisher was no where near the robberies." Dkt. 4 at 18. But Mr. Riggins does not state in his motion or reply where he was during the robberies.

Mr. Fisher asserts that Mr. Riggins failed to provide him with a copy of a crime scene report or investigate facts surrounding a pill bottle and a grocery bag. Dkt. 16 at 3–4. The significance of this evidence is not clear from Mr. Fisher's § 2255 materials, and the Court has not scoured the record in the criminal case to construct a successful argument for him. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments . . . are waived.") (internal quotations omitted). Regardless, Mr. Fisher does not state what he believes he could have learned from the crime scene report or what Mr. Riggins could have

---

ingested two doses of heroin before he died, only one of which Anderson supplied, and that investigation into the cause of Reader's death may have undermined the government's evidence for the death results enhancement by showing that the heroin unconnected to Anderson was independently lethal. . . [T]hese allegations are sufficiently precise to satisfy Anderson's burden.").

discovered from further investigation into the pill bottle and the grocery bag that would have made a difference in his case.

Finally, Mr. Fisher asserts that Mr. Riggins should have hired an expert to analyze fingerprints from the pill bottle and grocery bag referenced above. Dkt. 4 at 16; dkt. 16 at 3. Mr. Fisher's submissions indicate that defense counsel may have utilized a fingerprint analyst, contrary to his argument.[2] Regardless, Mr. Fisher does not deny that the fingerprints attributed to him were his, and he does not provide information from which the Court can infer that an expert would have concluded as much.

For all his criticisms of Mr. Riggins' investigation, Mr. Fisher provides no information about what a proper investigation would have yielded. *See Long*, 847 F.3d at 920. Accordingly, he provides the Court no basis to find that Mr. Riggins' investigation rendered his representation constitutionally ineffective.

**D.     Failures to Challenge Evidence at Trial**

Mr. Fisher next argues that Mr. Riggins failed him by failing to challenge three pieces of evidence at trial. None of these arguments justifies relief under § 2255.

Mr. Fisher asserts that Mr. Riggins should have moved to suppress evidence obtained in a search of his cell phone on grounds that search was completed without a warrant. Dkt. 4 at 16. But the investigator who examined the phone testified at trial that he received the phone and the warrant authorizing the search simultaneously. Crim. dkt. 107 at 28:14–20. Mr. Fisher offers no evidence

---

[2] *See* dkt. 4-3 at 7:8–21 ("There was a fingerprint recovered off the pill bottle that did not match to anyone. There were multiple fingerprints recovered off of a Marsh bag dropped by the robber at the 8-18 robbery. Six of those fingerprints matched Mr. Fisher. . . . Mr. Dazey . . . petitioned this court for funds, hired an independent expert. Their expert reviewed the fingerprints recovered from the Marsh bag and also concluded that those were a match for Mr. Fisher.").

to the contrary, so there is no basis to find that he was prejudiced by Mr. Riggins' decision not to move to suppress evidence taken from the phone.

Mr. Fisher asserts that Mr. Riggins should have impeached the testimony of trial witness Isias Adal, who testified that he identified Mr. Riggins as the robber in a photo array after stating in his "original statement" that he "could not identify the robber." Dkt. 4 at 17–18. But Mr. Fisher does not provide or cite an "original statement" with enough clarity for the Court to locate it.

Finally, Mr. Fisher states that it "is essential to note that Fisher was the only one in a white shirt in the photo lineup," suggesting this may have led Mr. Adal to identify him. Dkt. 4 at 4. But Mr. Riggins confronted that issue when cross-examining Mr. Adal, *see* dkt. 4-4 at 11:11–21, and Mr. Fisher does not state what more Mr. Riggins could have done with that fact or how it would have advanced his case.

In sum, Mr. Fisher has not provided a basis for the Court to find that Mr. Riggins was deficient in resisting the evidence presented at trial or that his representation prejudiced Mr. Fisher.

**E.      Failures at Sentencing**

Mr. Fisher argues that Mr. Riggins failed him in three respects at sentencing.

First, Mr. Fisher argues that Mr. Riggins failed adequately discuss the pre-sentence investigation report (PSR) with him or file objections to the PSR. Dkt. 4 at 19–20. The Court need not determine whether this is true. Mr. Fisher received the shortest sentence possible under the law for his seven convictions. Objections to the PSR would not have vacated any of Mr. Fisher's convictions. Therefore, he cannot articulate any prejudice from errors related to the PSR.

Second, Mr. Fisher argues that Mr. Riggins failed to challenge the overall reasonableness of the sentence or the forfeiture and supervised release components of the sentence. Again, though, Mr. Fisher received the statutory minimum prison sentence, and Mr. Riggins does not identify

what objections Mr. Fisher could have raised or how they would have raised a reasonable probability of a different sentence. Mr. Fisher has not carried his burden of pointing "to specific acts or omissions by his counsel." *Blake*, 723 F.3d at 879.

Mr. Fisher correctly notes that, had he been sentenced following passage of the First Step Act (FSA) in December 2018, his statutory minimum sentence would have been considerably shorter. Dkt. 4 at 21. When Mr. Fisher was sentenced, one brandishing conviction carried a minimum sentence of seven years, and a "second or subsequent" conviction carried a minimum sentence of 25 years. *See* 18 U.S.C. § 924(c)(1)(C)(i) (eff. Oct. 6, 2006–Dec. 20, 2018). Now, the 25-year minimum applies only to convictions for acts that occurred after a prior conviction *became final*. *Id.* (eff. Dec. 20, 2018). Instead of facing a minimum sentence of 21 years, Mr. Fisher faced a minimum sentence of 57 years. Mr. Fisher therefore contends that Mr. Riggins performed deficiently by failing to seek to continue sentencing until after the FSA was in place.

The House of Representatives passed an initial version of the FSA in May 2018. H.R. 5682, 115th Cong. (2018). Mr. Fisher was sentenced on August 13, 2018. Crim. dkt. 93. The Senate passed an amended version of the FSA on December 18, 2018. S. 752, 115th Cong. (2018). The House passed the bill as amended by the Senate two days later. *Id.* Thus, at the time of Mr. Fisher's sentencing, three months had passed since the FSA's passage in the House, and three months would pass again before the Senate acted on it. A reasonable attorney may well have known about the FSA in August 2018, but Mr. Fisher provides no reason to conclude that every reasonable attorney must have known then that passage was imminent *and* that the final version would benefit him so substantially. "[T]he Sixth Amendment does not require counsel to forecast changes or advances in the law." *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) (citing *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001)).

F.   **Errors by Appellate Counsel**

Mr. Fisher asserts that his appellate attorneys failed him in two ways, neither of which merits relief under § 2255.

First, as with trial counsel, Mr. Fisher accuses appellate counsel of "a serious lack of communication." Dkt. 4 at 21. And, as with trial counsel, Mr. Fisher fails to cite "specific acts or omissions" that would support a finding of deficiency. *Blake*, 723 F.3d at 879.

Second, Mr. Fisher asserts that his strongest argument on appeal was that he should be resentenced under the post-FSA version of § 924(c)(1)(C)(i) and that appellate counsel was deficient for failing to raise the issue to the Seventh Circuit, failing to petition for panel rehearing or rehearing *en banc* after the Seventh Circuit affirmed his convictions and sentence, or both. Mr. Fisher cites *Dorsey v. United States*, 567 U.S. 260 (2012), in support of his argument, but its connection is not obvious.

In *Dorsey*, the Supreme Court that defendants who committed crimes before passage of the Fair Sentencing Act but were sentenced after its passage were entitled to benefit from the new law's sentencing scheme. *Id.* at 281. Mr. Fisher committed his crimes before Congress passed the First Step Act, and he was sentenced before Congress passed the First Step Act. *Dorsey*'s rule does not intuitively apply to Mr. Fisher's situation.

Mr. Fisher offers no reason to find that it was unreasonable for appellate counsel not to ask the Court of Appeals to extend *Dorsey* to cover his case. He also offers no reason to find any probability that the Court of Appeals would have accepted his argument and applied *Dorsey* in this substantially different context.

Having declined to raise this argument on appeal, Mr. Fisher's counsel could not raise it as a basis for a panel rehearing. A petition for panel rehearing "must state with particularity each

12

point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." Fed. R. App. P. 40(a)(2). "It goes without saying that the panel cannot have 'overlooked or misapprehended' an issue that was not presented to it. Panel rehearing is not a vehicle for presenting new arguments." *Easley v. Reuss*, 532 F.3d 592, 593–94 (7th Cir. 2008).

And appellate counsel would have faced even higher hurdles in pursing rehearing *en banc*. "An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless (1) *en banc* consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Mr. Fisher does not point to divergent decisions within the Circuit regarding retroactive application of the FSA to defendants sentenced before its passage. In fact, he points to no decisions on the subject at all. He offers no reason to find that this question is so exceptionally important as to merit rehearing *en banc*. Given the dubious nature of the argument Mr. Fisher wished to raise, the Court cannot find that his counsel performed unreasonably or prejudiced him by attempting to raise it for the first time in a petition for rehearing *en banc*.

## IV.  Conclusion

For the reasons explained in this Order, Mr. Fisher's motion for relief pursuant to § 2255 is **DENIED** and this action is dismissed with prejudice. The **clerk is directed to:**

1) enter final judgment in this action;

2) docket a copy of this order in the criminal case, *United States v. Fisher*, no. 1:15-cr-00157-JMS-MJD-1; and

3) terminate the §2255 motion, dkt. [152], pending in the criminal case.

## V. Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Fisher has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 10/24/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DEXTER FISHER
15186-028
MCCREARY - USP
MCCREARY U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 3000
PINE KNOT, KY 42635

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brad.shepard@usdoj.gov